IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **SHAMBAUGH & SON, L.P.,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case Number 1:22-cv-265 |
| **CONTINENTAL CASUALTY COMPANY** | ) **DEMAND FOR JURY TRIAL** |
| **Defendant.** | ) |

### PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW SHAMBAUGH & SON, L.P., (herein after referred to as "SHAMBAUGH" or "Plaintiff"), and files its Original Complaint against Defendant CONTINENTAL CASUALTY COMPANY (hereinafter referred to as "CONTINENTAL") for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, and a Declaration of its rights against Defendant CONTINENTAL. In support thereof, Plaintiff would respectfully show the Court the following:

### I.

### PARTIES

1. Plaintiff SHAMBAUGH & SON, L.P. is a Texas limited partnership registered to conduct business in the State of Indiana and having its principal place of business in Fort Wayne, Indiana. At all relevant times, SHAMBAUGH was insured under one or more of the policies set forth herein. The limited partner of SHAMBAUGH is CS48 Acquisition Corp., a Delaware corporation with its principal place of business in Norwalk, Connecticut. The general partner of SHAMBAUGH is CSUSA Holdings, LLC, a Delaware limited liability company with its

principal place of business in Norwalk, Connecticut. EMCOR CSI Holding Co., is the member of CSUSA Holdings, L.L.C., and is a Delaware corporation with its principal place of business in Norwalk, Connecticut.

2. Defendant CONTINENTAL CASUALTY COMPANY is a foreign, for profit corporation organized and existing under the laws of the State of Illinois with its principal place of business in Chicago, Illinois. CONTINENTAL was and is at all relevant times either admitted to do business as an insurer under the laws of the State of Indiana or authorized to sell insurance in the State of Indiana through a licensed surplus lines broker. CONTINENTAL is registered to conduct business with the Indiana Department of Insurance with a mailing address of 150 W Market Street, Suite 800, Indianapolis, Indiana 46204-2814

## III.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. Section 1332(a)(1) because plaintiff and defendant are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. This Court also has jurisdiction over this declaratory judgment action pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. Section 2201. An actual and substantial controversy exists between the parties.

5. Venue is proper in the Northern District of Indiana, Fort Wayne Division pursuant to 28 U.S.C. § 1391(b)(1).

## IV.

## THE POLICIES

6. CONTINENTAL made, executed, and delivered one or more policies of

comprehensive general liability insurance to EMCOR GROUP, INC. including without limitation the following: policy number GL4025755083 (effective 10/01/2013 – 10/01/2014) and policy number GL4025755651 (effective 10/01/2014 – 10/01/2015) (the "Policies"). (True and correct copies of the Policies issued by CONTINENTAL are attached hereto as **Exhibit "A"** and **Exhibit "B"**, respectfully, and incorporated herein by this reference as if set forth in full.)

7.   Plaintiff SHAMBAUGH & SON, L.P. is a named insured under the Policies pursuant to the Named Insured Endorsement.

8.   CONTINENTAL agreed to insure the business operations of SHAMBAUGH in any state in which it did business. However, the principal location of the insured risk is SHAMBAUGH's principal place of business in Fort Wayne, Indiana. SHAMBAUGH at all relevant times had its principal place of business in Fort Wayne, Indiana when the Policies were placed and during negotiations of the Policies terms.

9.   The Policies are occurrence policies with a $2,000,000 each occurrence limit and a $6,000,000 general aggregate limit (other than products completed operations).

10.  Under the Commercial General Liability Coverage Part, Coverage A Bodily Injury and Property Damage Liability provides CONTINENTAL "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Coverage A also states CONTINENTAL has "the right and duty to defend the insured against any 'suit' seeking those damages." Further, Coverage A states: "This insurance applies to 'bodily injury' and 'property damage' only if…the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the coverage territory."

11.  Coverage A defines "occurrence" as "an accident, including continuous or

repeated exposure to substantially the same general harmful conditions."

12. Coverage A is subject to a $500,000 each occurrence deductible pursuant to the Deductible Endorsement.

## V.

## STATEMENT OF FACTS

13. On June 23, 2015, a lawsuit was filed against SHAMBAUGH in the 15th Judicial District in Grayson County, Texas, entitled <u>Ruiz Food Products, Inc. v. Shambaugh & Son, L.P. and CSUSA Holdings, LLC</u> under Cause No. CV-15-0928 in connection with SHAMBAUGH's refrigeration construction services at Ruiz Food Products, Inc.'s ("Ruiz") facility in Denison, Texas (hereinafter referred to as the "Underlying Action"). Specifically, the Underlying Action arose out of Ruiz's retention of SHAMBAUGH under a single contract to perform refrigeration construction services related to NH3 piping, glycol piping, and HVAC systems (the "NH3/HVAC Systems") associated with Ruiz's expansion project at its Denison, Texas facility.

14. Ruiz sought damages from SHAMBAUGH related to alleged property damage arising out of SHAMBAUGH's alleged negligent installation of the NH3/HVAC Systems performed under a single contract, which resulted in three shutdowns at Ruiz's Denison facility. (A true and correct copy of Ruiz's Second Amended Original Petition in the Underlying Action is attached hereto as **Exhibit "C"** and incorporated herein by reference.)

15. SHAMBAUGH provided notice of the Underlying Action to CONTINENTAL in accordance with the terms of the Policies. SHAMBAUGH has complied with all other relevant conditions of the Policies.

16. Pursuant to the Policies of comprehensive general liability insurance referred to above, CONTINENTAL promised to defend SHAMBAUGH and pay all sums which

SHAMBAUGH became obligated to pay because of property damage caused by an occurrence during the effective coverage period of the Policies.

17. Plaintiff in the Underlying Action made allegations and claims indicating, and evidence is otherwise available, that property damage occurred during the effective periods of the Policies issued by CONTINENTAL.

18. As a result, CONTINENTAL was required to defend and indemnify SHAMBAUGH in the Underlying Action under the terms of the Policies.

19. No applicable exclusions to the Policies preclude CONTINENTAL's duty to defend and indemnify SHAMBAUGH in the Underlying Action.

20. On or about December 2, 2015, CONTINENTAL agreed to defend SHAMBAUGH in the Underlying Action under a reservation of rights. On or about August 18, 2020, the parties reached a confidential global settlement.

21. Prior to the global settlement, SHAMBAUGH, through its counsel, expounded to CONTINENTAL that there was a single occurrence pursuant to the terms of the Policies, necessitating SHAMBAUGH's satisfaction of a single $500,000.00 deductible. (A true and correct copy of the August 14, 2020 correspondence is attached hereto as **Exhibit "D"** and incorporated herein by this reference as if set forth in full.) Specifically, the three shutdowns were caused by a single cause – SHAMBAUGH's allegedly negligent performance under the single contract. Therefore, pursuant to the express terms of the Policies, there was a single "occurrence" arising out of the "continuous or repeated exposure to substantially the same general harmful conditions," i.e. SHAMBAUGH's allegedly negligent installation performed under a single contract.

22. On or about September 9, 2020, after the Underlying Action settled,

CONTINENTAL asserted the Underlying Action constituted three separate and distinct occurrences resulting in three $500,000.00 deductibles. (A true and correct copy of CONTINENTAL's September 9, 2020, correspondence is attached hereto as **Exhibit "E"** and incorporated herein by this reference as if set forth in full.)

23.     Notwithstanding the legal obligation to participate in the defense of the Underlying Action, CONTINENTAL failed to indemnify SHAMBAUGH fully and completely as required under the terms of the Policies at issue by charging three separate $500,000.00 deductibles thereby effectively eviscerating coverage for the settlement. CONTINENTAL's failure and refusal to completely indemnify SHAMBAUGH by charging three separate deductibles is contrary to the terms of the Policies and applicable law.

24.     CONTINENTAL's position misrepresents the pertinent facts regarding coverage and the terms of the Policies. The definition of "occurrence" is not changed because there were three separate shutdowns. An occurrence is defined by cause of damage, not the number of shutdowns. Based on the policy's definition of "occurrence", the number of occurrences is dependent on the condition giving rise to property damage. Specifically, where there is a repeated exposure or a continuous condition to the same or substantially same harmful condition giving rise to multiple injuries, there is but one occurrence. The number of shutdowns does not equate to the number of occurrences. Here, each of the shutdowns arose from "continuous or repeated exposure to substantially the same general harmful <u>conditions.</u>" (emphasis added). There was one negligent act or omission by the insured which was the sole proximate cause of all resultant damages stemming from the shutdowns – SHAMBAUGH's allegedly negligent installation of the NH3/HVAC Systems performed under a single conttract. The fact there were three discrete shutdowns, or multiple injuries, over a period of time has no legal bearing on the

number of occurrences because, in accordance with the definition of "occurrence" as construed under Indiana law, there is one occurrence if the damage or injuries arose out of "continuous or repeated exposure to substantially the same general harmful <u>conditions</u>." (emphasis added).

25. Additionally, under Indiana law, the performance under a single contract constitutes a single occurrence regardless of the number of injuries or dates of loss. Similarly, under Indiana law damage occurring over time constitutes a single occurrence where the damage arises from a single event or chain of events arising from "continuous or repeated exposure to substantially the same general harmful conditions." Further, under Indiana law, the timing of exposure and resulting injuries may differ, but there is a single occurrence where the injuries are caused by a continuous exposure to substantially the same general harmful conditions. Here, all injuries arose out of a single occurrence, i.e. continuous exposure to substantially the same general harmful conditions.

26. Nevertheless, CONTINENTAL applied three $500,000 deductibles thereby eviscerating coverage for the settlement notwithstanding the definition of "occurrence" under the policies and the application of the "cause test." CONTINENTAL's application of three deductibles was committed with malice, fraud, gross negligence, and/or oppressiveness which did not result from a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, and/or other human failing whereby CONTINENTAL applied such deductibles notwithstanding the terms of the policies, the pertinent facts of the Underlying Action, and with knowledge of the application of the "cause test" to determine the number of occurrences.

27. As a result of the Underlying Action and CONTINENTAL's subsequent conduct, SHAMBAUGH has been compelled to incur loss and adjustment, defense, settlement, mitigation, and investigative costs as well as attorneys' fees, expert fees and other expenses.

28. CONTINENTAL should have, but failed to, agree to indemnify SHAMBAUGH fully and completely in the Underlying Action by charging a single deductible pursuant to the terms and conditions of the policies at issue. In refusing to indemnify SHAMBAUGH fully and completely under the policies, CONTINENTAL has made material misrepresentations concerning SHAMBAUGH's coverage under said policies.

29. Since approximately 1997, a period of twenty-five (25) years, CONTINENTAL has been the primary commercial general liability insurer under the policies issued to EMCOR Group, Inc., for which SHAMBAUGH is deemed an insured. During that time, CONTINENTAL, in its course of dealing in thousands of lawsuits, has applied a single deductible for property damage arising from the insured's performance of a contract for construction, notwithstanding the number of injuries or whether such completed work by the insured caused losses at different times. CONTINENTAL's application of deductibles to be charged is in violation of such course of dealing and pattern and practice.

## VI.

## CAUSES OF ACTION

A. **First Claim: Breach of Contract**

30. Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

31. As set forth above, CONTINENTAL, among other things, pursuant to the Policies terms and conditions, agreed to indemnify Plaintiff on account of property damage caused by an occurrence, falling within or potentially falling within the coverage of, or as defined in, each insurance policy referenced herein. Pursuant to each of these insurance Policies, CONTINENTAL also had a duty to conduct a reasonable, adequate, and diligent investigation of

any claims made against Plaintiff and affecting CONTINENTAL's duty to indemnify Plaintiff.

32. Plaintiff is informed and believes and thereon alleges that the insurance Policies issued by CONTINENTAL did in fact, at a minimum, potentially cover all of the allegations raised in the Underlying Action and required CONTINENTAL to fully indemnify Plaintiff in the Underlying Action and in doing so impose a single $500,000 deductible, not three deductibles, relating to the confidential settlement amount.

33. Plaintiff has performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of each written contract of insurance, except to the extent that Plaintiff was prevented by CONTINENTAL or excused from such performance, or said conditions, covenants and promises have accrued or have been waived.

34. Plaintiff duly tendered the indemnification of each of the claims made against it in the Underlying Action to CONTINENTAL. CONTINENTAL failed and/or refused to fully indemnify Plaintiff for the claims brought against it in the Underlying Action as required by the applicable insurance Policies by charging three separate $500,000.00 deductibles thereby effectively eviscerating coverage for the settlement.

35. As a result of the Underlying Action, Plaintiff has been forced to incur settlement, loss, adjustment and investigative costs, including attorneys' fees and costs, experts' fees and costs, court costs and other expenses, because of property damage and/or personal injuries caused by an occurrence falling within, or potentially falling within the coverage of, or as defined in, each of the Policies referred to hereinabove. In breach of these insurance Policies, CONTINENTAL through its officers and/or managerial agents, has refused and continues to refuse to fully indemnify Plaintiff in connection with the Underlying Action by charging three separate $500,000.00 deductibles thereby effectively eviscerating coverage for the settlement.

36. Plaintiff is informed and believes and thereon alleges that CONTINENTAL did not reasonably or diligently investigate the claims asserted by the claimants in the Underlying Action against Plaintiff or accept Plaintiff's request for indemnity as to the Underlying Action. Additionally, Plaintiff is informed and believes, and thereon alleges, that CONTINENTAL failed to properly respond to Plaintiff's request to CONTINENTAL for indemnification by charging three separate $500,000.00 deductibles thereby effectively eviscerating coverage for the settlement.

37. The failure and refusal of CONTINENTAL to adequately investigate the claims made against Plaintiff by the claimants in the Underlying Action; the failure and refusal to provide indemnification to Plaintiff by charging three separate $500,000.00 deductibles thereby effectively eviscerating coverage for the settlement; and the failure and refusal of CONTINENTAL to adequately respond to the indemnification demands and other correspondence from Plaintiff also constitutes breaches of the terms and conditions of the Policies at issue.

38. By reason of CONTINENTAL's refusal to fully and completely indemnify Plaintiff pursuant to the express obligation to do so in the Policies, CONTINENTAL has breached its written contracts of insurance under which Plaintiff is entitled to coverage as an insured.

39. As a direct and proximate result of the breaches by CONTINENTAL of its respective duties, Plaintiff has incurred substantial attorneys' fees and costs, experts' fees and costs and other expenses in defense, loss adjustment, mitigation, investigation and settlement in an amount within the jurisdictional limits of this Court, according to proof. As a direct and proximate result of the CONTINENTAL's breach of its contractual duties and in mitigation of

Plaintiff's own damages, Plaintiff has incurred attorneys' fees and costs, experts' fees and costs and other costs and expenses in bringing this action, in an amount according to proof. Plaintiff has been damaged in an amount presently unknown, but in excess of $750,000.00.

40. Plaintiff is entitled to recover as damages against CONTINENTAL all the attorneys' fees, costs, and expenses, which it has incurred as a result of the Underlying Action and instant action together with interest. Plaintiff has been damaged in an amount presently unknown, but in excess of the jurisdictional minimum of this Court, to be established at the time of trial, according to proof.

### B. Second Claim: Breach of the Implied Covenant of Good Faith and Fair Dealing

41. Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

42. CONTINENTAL, at all material times, had the duty to act fairly and in good faith to its insured in carrying out its responsibility under its Policies of insurance.

43. Pursuant to the Policies, CONTINENTAL has implicit obligations to act fairly and in good faith to Plaintiff, to promptly and reasonably investigate claims against Plaintiff, and to make reasonable coverage decisions. The Policies identified herein are subject to an implied covenant of good faith and fair dealing such that no party will disturb the rights of the other to obtain the full benefits of the contract. CONTINENTAL has breached the implied covenant of good faith and fair dealing when refusing to provide necessary coverage(s) owed under the Policies when tendered and by charging three separate $500,000.00 deductibles thereby effectively eviscerating coverage for the settlement.

44. Plaintiff is informed and believes, and on such basis alleges that CONTINENTAL breached its obligations to act fairly and in good faith towards Plaintiff by committing, among

other things, the following acts or omissions:

    a.    Making an unfounded refusal to pay policy proceeds by charging three separate $500,000.00 deductibles thereby effectively eviscerating coverage for the settlement;

    b.    Refusing to conduct a reasonable investigation as to the causes of alleged damages in violation of Indiana Code § 27-4-1-4.5(4);

    c.    Failing to give a reasonable interpretation to the provisions of the Policies, failing to reasonably apply provisions of the Policies to the claims, and unreasonably refusing to acknowledge that the claims asserted against Plaintiff in the Underlying Action constitute a single occurrence, necessitating the satisfaction of a single deductible, under the respective insurance Policies, and failing to timely, promptly and without delay, pay for the reasonable and necessary indemnification of Plaintiff in the Underlying Action in violation of Indiana Code § 27-4-1-4.5(14);

    d.    Misrepresenting the provisions of the Policies and the factual circumstances and/or interpreting them so as to resolve ambiguities and uncertainties against Plaintiff and to favor its own economic interests in violation of Indiana Code § 27-4-1-4.5(1);

    e.    Compelling the insured to institute litigation to recover amounts due under the insurance Policies by offering substantially less than the amounts ultimately recovered in actions brought by the insured in violation of Indiana Code § 27-4-1-4.5(7);

    f.    Embarking on a course of conduct and pattern and practice, whereby CONTINENTAL would fail and/or refuse to indemnify Plaintiff and/or to acknowledge the indemnity obligation owed to Plaintiff and/or to participate in the funding of the settlement of the Underlying Action by charging three separate $500,000.00 deductibles thereby effectively eviscerating coverage for the settlement;

    g.    Pursuing such a course of conduct and pattern and practice in violation of

the terms of the policies and Indiana law with the knowledge, understanding, consent and approval of CONTINENTAL's respective managing officers, directors, agents and employees; and/or

    h. Refusing to completely indemnify Plaintiff under the policies by charging three separate $500,000.00 deductibles thereby effectively eviscerating coverage for the settlement, even though it was reasonably clear that the claims in the Underlying Action constituted a single occurrence necessitating the satisfaction of a single deductible, thereby compelling Plaintiff to engage legal counsel and to initiate this Action to recover such indemnity benefits owed and to compel CONTINENTAL to honor their obligations under the insurance Policies.

 45. The foregoing acts and omissions were committed with malice, fraud, gross negligence, and/or oppressiveness which did not result from a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, and/or other human failing.

 46. The officers, directors, and/or managing agents and/or employees of CONTINENTAL participated in, authorized and/or ratified the wrongful conduct as alleged above.

 47. As a result of the above conduct of CONTINENTAL in this matter, Plaintiff is entitled to a sum that will serve to punish CONTINENTAL and to deter CONTINENTAL and others from engaging in the same conduct in the future.

 48. The imposition of punitive damages upon CONTINENTAL for its conduct alleged herein is warranted and would be in the public interest.

 49. As a result of the above conduct of CONTINENTAL in this matter, Plaintiff has also incurred substantial attorneys' fees and costs, experts' fees and costs and other expenses in

investigation and settlement and has been required to bring this Complaint to enforce its rights under the policies mentioned herein. Plaintiff is entitled to recover as damages against CONTINENTAL, all the aforementioned fees, costs and expenses which it has incurred as a result of the Underlying Action and the instant action, together with interest thereon, including attorneys' fees. Plaintiff has suffered damages and will continue to suffer damages in an amount exceeding $750,000.00

50. The above-described conduct of CONTINENTAL has been and continues to be intentional, unreasonable, capricious and arbitrary, and constitutes violations of the insurance Policies referred to above in this Complaint. The above-described conduct further constitutes intentional, malicious, oppressive, despicable, grossly negligent, and knowing conduct and conscious disregard of Plaintiff's rights, and stems from improper and evil motives, including CONTINENTAL's desire to reduce or avoid their obligations to Plaintiff, so as to justify an award of punitive and exemplary damages.

        **D.**      **Third Claim: Declaratory Relief**

51. Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

52. As set forth above, CONTINENTAL, among other things, agreed to investigate, adjust, defend and indemnify Plaintiff as to any claims made in the Underlying Action of alleged property damage caused by an occurrence falling within and/or potentially falling within the coverage defined in each policy. Additionally, Plaintiff contends the claims in the Underlying Action constitute a single occurrence under the express terms of the Policies, necessitating the satisfaction of a single deductible by Plaintiff. Plaintiff is informed and believes and thereon alleges that CONTINENTAL unreasonably contends otherwise.

53. Defense fees and costs, including attorneys' fees and costs, experts' fees and costs, settlement, repair, investigation, loss and adjustment fees, costs and expenses have been incurred by Plaintiff because of property damage caused by an occurrence falling within and/or potentially falling within the coverage of, and/or as defined in, each of the policies referred to hereinabove.

54. Plaintiff provided timely notice of the claims asserted against it in the Underlying Action to CONTINENTAL. Plaintiff has performed each covenant and/or condition which on its part must be performed in order to obtain a defense and indemnification under each and all of the Policies referenced hereinabove, or have been excused from so performing as a result of CONTINENTAL's breach of its respective insurance agreements, including refusal to indemnify Plaintiff, among other matters.

55. A dispute has arisen between Plaintiff and CONTINENTAL in that Plaintiff contends it was and is entitled to be completely and fully indemnified and defended, and not charged three $500,000 deductibles. Here, CONTINENTAL charged three $500,000 deductibles, thereby eviscerating coverage for the settlement, in the Underlying Action. Accordingly, SHAMBAUGH is entitled to be reimbursed for the attorneys' fees and costs, experts' fees and costs, and other costs and expenses in the defense, repayment, loss adjustment, mitigation, investigation and settlement and other costs and expenses incurred as a result of the Underlying Action.

56. An actual controversy exists between Plaintiff and CONTINENTAL regarding its duty to completely indemnify Plaintiff for any damages and/or settlement monies which Plaintiff may be required to pay in connection with respect to the Underlying Action pursuant to the terms and conditions insurance Policies, which allow for CONTINENTAL to charge no more than a

single deductible of $500,000 given the cause of damage. A declaratory judgment is necessary and appropriate to determine the rights and duties of the parties under the insurance Policies.

## VII.

## DAMAGES

57. Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

58. As a result of CONTINENTAL's failure to fully and completely indemnify Plaintiff by the charging of no more than a single $500,000 deductible, rather than three $500,000 deductibles, thereby eviscerating coverage for the settlement, Plaintiff has suffered actual damages in the form of attorneys' fees, litigation costs, and investigative costs in the Underlying Action in an amount exceeding $750,000.00. In addition, Plaintiff has suffered and will suffer attorneys' fees and litigation costs by reason of prosecuting this Complaint.

## VIII.

## PRAYER

ACCORDINGLY, Plaintiff requests that Defendant CONTINENTAL have Judgment against them as follows:

    a. That Plaintiff be entitled to a judicial determination that CONTINENTAL owes Plaintiff full indemnification as to the Underlying Action and is entitled only to a single $500,000 deductible;

    b. That Plaintiff be entitled to a judicial declaration that CONTINENTAL owes Plaintiff indemnification for all expenses and settlement payments from all claims in the Underlying Action including, but not limited to, attorneys' fees, costs, settlement payments and/or Judgment subject to a single $500,000 deductible;

   c. That Plaintiff be entitled to a judicial declaration that the claims in the Underlying Action constitute a single occurrence as defined in the Policies, necessitating the satisfaction of a single deductible by Plaintiff;

   d. Judgment awarding Plaintiff all damages it has suffered as a result of CONTINENTAL's breach of the insurance policy contracts, including attorneys' fees and costs;

   e. Judgment that Plaintiff is entitled to recover its costs and expenses, including attorneys' fees incurred in prosecuting this action and in pursuing full indemnity from CONTINENTAL;

   f. Judgment awarding Plaintiff all damages it has suffered as a result of CONTINENTAL's breach of the implied covenant of good faith and fair dealing, including punitive damages and attorneys' fees and costs;

   g. Judgment awarding Plaintiff its costs and pre-judgment and post-judgment interest in the maximum as allowed by law; and

   h. Such other and further relief to which Plaintiff may be justly entitled.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rule of Civil Procedure.

Dated: August 11, 2022

Respectfully Submitted,

**BECKMAN LAWSON, LLP**

By: /s/ *Matthew J. Elliott*
Matthew J. Elliott, Esq., #21242-02
Craig R. Patterson, Esq., #18104-02

       201 West Wayne Street
       Fort Wayne, IN 46802
       Telephone:  (260) 422-0800
       melliott@beckmanlawson.com
       cpatterson@beckmanlawson.com


       **Attorneys for Plaintiff Shambaugh & Son, L.P.**